606 So.2d 1142 (1992)
Charles Darvin WESTBROOK
v.
Sandra D. Westbrook OGLESBEE.
No. 91-CA-0468.
Supreme Court of Mississippi.
September 10, 1992.
*1143 Jack Parsons, Parsons & Taylor, Wiggins, for appellant.
James R. Hayden, Hattiesburg, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and McRAE, JJ.
PITTMAN, Justice, for the Court:
Sandra Dee Oglesbee filed a motion for modification of final judgment of divorce requesting that Charles Darvin Westbrook be ordered to pay $650 per month for child support. Darvin filed a response to the motion and a counterclaim requesting that he be awarded custody of the minor child on the basis that Sandra was unfit. The chancellor found that both Sandra and Darvin were unfit, and remanded custody of Amanda Westbrook to the Department of Human Resources of Pearl River County, Mississippi, with instructions to place custody of Amanda Westbrook, under its continuing supervision, with Sara Sorrells, the maternal grandmother of the minor.
Darvin appeals from the lower court's decision, assigning as error the following: (1) the lower court erred in refusing to modify the custodial arrangements in favor of Charles Darvin Westbrook; (2) the lower court erred in finding Charles Darvin Westbrook was not a proper person to have custody and control of the minor child; and (3) the trial court erred in modifying the custodial arrangements of the minor child by transferring custody to the maternal grandparent, Sara Sorrells, thus leaving the child in the same living situation. After considering the evidence presented to the lower court, we cannot find that the father is unfit and therefore remand this case for the chancellor to reconsider the father's fitness, further taking into account his conduct over the last two years.

I.
Darvin and Sandra were married on March 3, 1979. One child, Amanda Dee Westbrook, was born of their marriage on August 8, 1979. On May 21, 1981, Darvin was granted a divorce from Sandra on the ground of habitual, cruel and inhuman treatment. Sandra was granted custody of Amanda, while Darvin was granted visitation rights and ordered to pay $135.00 per month for child support.
After their divorce, both Darvin and Sandra remarried. Darvin moved to Cocoa, Florida, and married Debbie Westbrook, in December of 1988. Sandra remained in Picayune, Mississippi, and married Nolen Oglesbee in 1982. Sandra and Nolen had one child of their own, Lindsey Oglesbee, who was seven years old at the time of trial. Sandra and Nolen were divorced in 1988, but they later remarried two days before trial on January 22, 1991. Sandra, Nolen, Amanda and Lindsey were all living with Sandra's mother, Sara Sorrells, at the time of trial.
On July 30, 1990, Sandra filed a motion for modification of final judgment of divorce requesting that Darvin be ordered to pay $650.00 per month for child support. On September 10, 1990, Darvin filed a response to the motion and counterclaim requesting that he be awarded custody of Amanda. He also filed a separate complaint alleging that Sandra's moral conduct and activities were not in the best interest of the child. Sandra filed an amendment to her motion for modification requesting that the court grant custody to Sara Sorrells, Amanda's maternal grandmother, if both she and Darvin were determined to be unfit.
At trial, Darvin introduced his income tax returns and W-2 forms for several years and stipulated that if Sandra retained custody of Amanda, he would pay 14% of his adjusted gross wages as an increase in child support. Darvin was an employee of Rockwell International, Rocketdyne Division, and worked at the Kennedy Space Center. At the time of trial, Sandra was an Assistant Manager at Popeye's Fried Chicken in Slidell, Louisiana. With Darvin's stipulation as to child support, the only issue to be determined at trial was the question of custody.
After extensive testimony, the chancellor determined that neither Sandra nor Darvin were fit and suitable parents to have custody *1144 of Amanda. The chancellor remanded the custody of Amanda to the Department of Human Resources of Pearl River County, Mississippi, with instructions to place custody of Amanda under its continuing supervision with Sara Sorrells, the maternal grandmother, until further order of the court. Sandra and Nolen were ordered to remove themselves from Sara Sorrells' home and they were ordered to attend drug and alcohol rehabilitation classes. Darvin was ordered to pay $400.00 per month for child support, and Sandra was ordered to pay $50.00 per month.
Darvin appealed the lower court's decision to this Court alleging that the lower court erred in determining that he was unfit to have custody of Amanda. Sandra, on the other hand, does not argue that the lower court erred in determining that she was unfit. She maintains that the lower court was correct in finding that she and Darvin were unfit and in placing Amanda in the custody of Sara Sorrells. Thus, the only issue to be decided at trial was whether Darvin was fit to have custody of Amanda.

II

DID THE LOWER COURT ERR IN DETERMINING THAT DARVIN WAS NOT THE FIT AND PROPER PERSON TO HAVE CUSTODY OF AMANDA?
In Phillips v. Phillips, 555 So.2d 698 (Miss. 1989), this Court set out the prerequisites to modify a child custody order:
There are two prerequisites to a modification of child custody. First, the moving party must prove by a preponderance of the evidence that, after the entry of the judgment sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody. Pace v. Owens, 511 So.2d 489 (Miss. 1987); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984).
This court's scope of review is limited by the substantial evidence or manifest error rule... . Therefore, the Chancellor's decision to modify child custody ... cannot be overturned unless "manifest error" is shown.
Phillips, 555 So.2d at 700-01.
The chancellor's decision to modify the original custody decree is supported by the evidence. There was a material change in circumstances and it was in the best interest of the child to remove her from her mother's custody. Sandra admitted at trial to having lived with several men without the benefit of marriage while maintaining custody of Amanda. She was also arrested numerous times within the past two years for drug related charges. Michael Davis testified that he stayed at Sandra's trailer a lot and that they would take drugs together such as Zannex, Valium, Tylenol 4, and cocaine.[1] Davis testified that Sandra kept drug paraphernalia in her trailer used to make crack. Joe Monk Mitchell, a constable in Pearl River County, testified that drug paraphernalia was found when he went to evict Sandra from the trailer. Darrell Norris also testified that when he was living with Sandra, she would take his prescription drugs such as Valium and Tylenol. Controlling this question is the fact that even on appeal, Sandra does not dispute the lower court's determination that she was unfit to have custody of Amanda. Thus a material change in circumstances.
However, the question before this Court is whether Darvin is unfit to have custody of Amanda. In Rodgers v. Rodgers, 274 So.2d 671 (Miss. 1973), this Court dealt with a custody dispute between the child's natural mother and the paternal grandparents. This Court held:
It is apparent from the pleadings that this is in reality a contest between the natural mother of the child and third parties, the paternal grandparents, and is governed by the law relative to such contest. In such contest it is presumed *1145 that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. Simpson v. Rast, 258 So.2d 233 (Miss. 1972); Stegall v. Stegall, 151 Miss. 875, 119 So. 802 (1929); and Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900).
Rodgers, 274 So.2d at 673 (emphasis added).
Sandra emphasizes that Darvin had not sent Amanda any birthday cards and gifts over the last several years, and that he hardly ever had any contact with Amanda. He also testified that Amanda was in the seventh grade when she was really only in the sixth grade. Darvin also didn't attend functions such as softball games and dance recitals. Darvin, however, lives in Florida, twelve to fourteen hours away. These facts do not establish that Darvin in any way abandoned Amanda. Furthermore, it does not appear that Darvin was in arrears in child support. Amanda also spends several weeks with her father during summer vacation. Thus, the lower court would have to find that Darvin was either morally or mentally unfit in order to deny him custody of Amanda.
The evidence offered with respect to Darvin's character is listed as follows:
1) Darvin admitted that he and his wife drink. He has not, however, had any problems with any law officers as a result of his drinking.
2) Darvin admitted that he used drugs such as marijuana and cocaine on a daily basis until 1984. He was involved in an accident due to drugs and alcohol in 1985, and has not used drugs since that time. Darvin has a government security clearance and is subjected to random drug screenings at work and has not used any drugs for six years.
3) Darvin admitted to taking Amanda swimming in July of 1990 at a creek in Pearl River County with a group of people. While they were at the creek, Aunt Tina smoked a marijuana cigarette. Darvin testified that Amanda was somewhere else when Aunt Tina smoked the cigarette, and that he did not participate.
4) Darvin admits that he does come into contact with people who take drugs.
5) Before Darvin remarried, he lived with Genie Garcia in Slidell, Louisiana. Darvin admitted that Amanda visited him while he was living with Ms. Garcia, but denied that Amanda slept in the same bed with them.
6) Darvin admitted that he reprimanded Amanda for dropping a ski glove in the water in a loud voice, but denied that he was drunk and that he cussed her out.
7) Sandra's counsel proffered Amanda's testimony into the record and stated that according to Amanda, Darvin and his wife got drunk when Amanda was visiting in Florida and could not find their way home.[2] The baby-sitter's boyfriend had to go find them and bring them home. Darvin denied this on cross-examination.
Darvin's past drug habit and the fact that he allowed someone to smoke marijuana when he took Amanda swimming give one cause for concern. Darvin, however, has never been arrested and there was no evidence that he has taken any drugs in the past six years. He also testified that he has not failed any of the drug tests given by his employer. Sandra, on the other hand, had been arrested several times in the past two years as a result of her drug problem. Nolen Oglesbee admitted that Sandra had been asked not to come back to Clyde's which is a bar in Picayune.
Dr. Clarence Thurman, a clinical psychologist, testified that in his professional opinion, Amanda would suffer severe emotional *1146 trauma if the Court took her away from her mother and grandmother. Evidence was introduced to show that Amanda was doing well in school and that she had won several citizenship awards. Ms. Sorrells saw to it that Amanda attended church regularly. It was also evident that Amanda was very close to her half-sister, Lindsey, and did not want to be separated from her.
In determining that Darvin was unfit, the chancellor made the following findings of fact:
1. Sandra's rearing of the child, Amanda, was done without the assistance of her former husband, Darvin;
2. Darvin has played a minimum role in the child's life, even failing to send yearly birthday cards;
3. Darvin's only contact with Amanda has been a brief period each Christmas and one to three weeks each summer (however, Darvin lives 12-14 hours away);
4. Amanda's last visits to Florida seemed strained and uncomfortable;
5. On one occasion, Darvin allegedly became intoxicated and yelled at Amanda for dropping a ski glove in the water;
6. While Amanda was visiting, Darvin allegedly indulged in alcoholic beverages to excess on several occasions;
7. A marijuana cigarette was allegedly smoked in Amanda's presence by one of Darvin's relatives on an outing to a water park in Pearl River, Mississippi.
The appropriate standard of review with respect to a chancellor's findings is that they will not be disturbed by this Court unless manifest error is shown. Phillips, 555 So.2d at 701. The fact that Darvin on occasion gets intoxicated is not in and of itself sufficient to determine that he is unfit to have custody of Amanda, nor is one instance of alleged yelling at Amanda for dropping a ski glove enough to deprive Darvin of custody. The fact that he has had problems with drug abuse in the past tends to lend support to the lower court's decision. There was no evidence that Darvin currently has a drug problem. He testified that he has not used drugs in the past six years and no evidence was introduced to refute his testimony. The only evidence regarding his involvement with drugs now is that Aunt Tina smoked a marijuana cigarette while they were at a waterpark, and the fact that he comes into contact with people that use drugs.
In the lower court's ruling, the chancellor ordered the Department of Human Services to place Amanda in the custody of her grandmother, since it determined that both parents were unfit. However, the chancellor did so without conducting a study to determine exactly what would be in the best interests of the child. Although a Home Study was conducted by the Department of Human Services, it was of a general nature and failed to make any specific recommendations as to the best interests of Amanda. The trial court should again consider the fitness of the father, considering both the evidence of his conduct presented at the first trial as well as his conduct of the past two years. An investigation may be conducted by Human Services specifically addressing, in the event the father is found unfit, whether the placement of the child in the grandmother's home would be in Amanda's best interest.
This Court is cognizant that § 93-11-65 of the Mississippi Code allows a child who has attained the age of twelve (12) to state her preference to the court as to whether she would rather live with her mother or father. Miss. Code Ann. § 93-11-65 (1991 Supp.). This statutory grant, however, is dependent upon parents being considered fit to have custody, and applies only to natural parents. Miss. Code Ann. § 93-11-65 (1991 Supp.). This statute does not provide any authority which would allow a child to choose a third party, such as Ms. Sorrells, over a natural parent. Although both parents have been deemed unfit in the present case, it seems logical to consider Amanda's preference in light of the fact that the chancellor may have erroneously found the father unfit. Even if the court was to consider Amanda's preference as a factor in the custody determination, it would be merely one element of many to be weighed by the chancellor. *1147 The chancellor is not in any way bound to respect the desires of the child, since the main objective remains the best interests of the child. Bell v. Bell, 572 So.2d 841, 846 (Miss. 1990).
It is a fact of Mississippi law that grandparents have no right to custody of a grandchild, as against a natural parent, absent a showing that the parent or parents have abandoned the child or are otherwise totally unfit. Ethredge v. Yawn, 605 So.2d 761 (1992); Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Rutland v. Pridgen, 493 So.2d 952, 954-55 (Miss. 1986). In the few instances where the Court places custody with a grandparent, abandonment by the parents was found, coupled with it being in the child's best interest to remain with the grandparent. Ethredge, 605 So.2d 761 (1992). We remand this case so that the trial court may consider Darvin's fitness anew, taking into consideration the past two years following the trial court's prior ruling.
Although Amanda may be happy living with her grandmother, it appears that the chancellor may have incorrectly found the father unfit to have custody. No evidence was presented indicating that Darvin has a drug problem. In fact, he has continually passed random drug screening which is required by his employment. On reverse and remand of this case, additional evidence needs to be presented relating to the fitness of the father, especially within the last two year period. Certainly a stronger case must be made against Darvin and matters of more current nature need to be shown to establish that he is unfit as a parent.
If the trial court determines that the father is fit, then he should be given custody. However, if the trial court finds the father unfit, the court should reconsider the placement of the child, seeking additional information from Human Services taking into account whether it is in the child's best interest to be placed in her grandmother's home.
As a final note, both attorneys, as well as the litigants themselves in ongoing child custody proceedings have a duty to keep the Chancery Court informed concerning the current whereabouts and conditions relating to the minor child. This periodic reporting allows the Chancery Court to insure that the best interests of the child are being protected during these often turbulent times.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Davis was currently serving time for selling controlled substances.
[2] The chancellor refused to allow Amanda to testify.