This appeal arises from a custody dispute between the father and paternal grandparents over Samuel Murphy, a minor child. The lower court denied custody to all respective parties and vested custody of the child in the Palmer Home for Children, located in Columbus, Mississippi. Finding that the chancellor was not in a position to adequately assess the respective parties' fitness and ability to care and provide for the minor child and erred in refusing to permit the parties to submit additional evidence pertaining to the issue of fitness, we reverse and direct the chancellor to revisit the issue of fitness.
 STATEMENT OF THE CASE
The present action began on October 29, 1990, with Clearmon and Rachel Murphy [hereinafter the Murphys] filing a complaint in the Neshoba County Chancery Court seeking to terminate the custody rights of their son, Alan Murphy, and requesting that they be awarded permanent custody of their grandson Samuel.
By an agreed order of the court dated February 8, 1991, Vicki Murphy, Alan's ex-wife and Samuel Murphy's natural mother, was joined as a necessary party. Alan Murphy answered the complaint, denying all the allegations and, in addition, filed a cross-complaint against Vicki Murphy for contempt and modification of divorce. Prior to trial, the chancellor ordered that Samuel remain in Alan's custody subject to visitation rights by the Murphys. The chancellor also issued an order which served to consolidate all of the matters between Samuel's father, mother and paternal grandparents.
A trial on the merits was held on February 10 through 13, and on March 30, 1992. At the outset, the chancellor stated that the scope of the case was limited to first, determining the fitness or unfitness of Alan Murphy, and second, after the determination of this fitness, determining the fitness of Clearmon and Rachel Murphy. At no time during the proceedings did Vicki Murphy assert a claim seeking custody of her son.
On March 30, 1992, the chancellor, after hearing testimony from Rachel and Clearmon Murphy, Alan Murphy, Vicki Murphy, and several other witnesses familiar with the family, agreed to permit the attorneys for the parties to summarize the remaining witnesses' testimony. The attorneys recited and offered their view as to what each of the remaining witnesses would testify to on direct, cross-examination and rebuttal. These witnesses included: J.R. Willis, Pam Murphy, Clearmon Murphy, and Alan Murphy.
On May 19, 1992, the chancellor, in his written Opinion determined that: 1) Alan Murphy was unfit to have the care and custody of Samuel; 2) Vicki Murphy had abandoned Samuel and had not asserted her right to custody; therefore she waived her right to custody; and 3) the Murphys were physically and emotionally unable to have the care and custody of Samuel. The chancellor additionally, on his own motion, called for further inquiry as to appropriate alternatives for custody of Samuel and set the date for the subsequent hearing. Prior to the hearing, Alan moved for a guardian ad litem to be appointed to represent Samuel.
At the outset of the hearing on July 21, 1992, the judge ruled that Alan's motion to appoint a guardian ad litem would be held in abeyance. During the course of this hearing, both parties brought forward alternative parties to assume custody of Samuel. The chancellor ruled that he would not consider any *Page 814 
testimony or evidence relating to the fitness and ability of Alan or the Murphy's to obtain custody, as he had already decided to refuse to award custody to either party. After this additional hearing on the matter, the chancellor determined that none of the alternatives for custody were suitable and issued an order which provided for custody of Samuel to be in the Palmer Home for Children located in Columbus, Mississippi. As part of this order, the chancellor also set forth the visitation rights for Alan and the Murphys and further ordered Alan to pay $150.00 per month for the care and support of Samuel. In addition, since no official order had been entered to correspond with the chancellor's opinion of May 19, 1992, an order incorporating by reference said opinion was entered on August 31, 1992.
Subsequently and on July 31, 1992, the Murphys filed a Motion for a New Trial and/or alternatively Relief from the Order awarding custody to the Palmer Home for Children. The basis for their motion was that the award of custody was not in the best interest of the minor child and was against the overwhelming weight of the evidence. Alan also filed a Motion for a New Trial and/or alternatively Relief from Judgment. On August 18, 1992, a hearing was held on these consolidated motions and additional evidence was offered in order to demonstrate that the chancellor's order was not in the best interest of Samuel. Two social workers, Paul Davey and Rudijo Purdy, were offered by the Murphys. Both witnesses testified that it was in Samuel's best interest that he be placed with his grandparents and that placing the child in an institution should be considered only as a last resort, after all possibilities were exhausted for family members to assume custody. Alan had a continuing objection to this testimony, stating that issue was res judicata. The Murphys countered stating that the order concerning the chancellor's opinion was not filed until sometime in late July and, therefore, additional evidence was permissible. On September 7, 1992, the chancellor entered an order denying both motions, stating that the Opinion entered on May 19, 1992, rendered the matter resjudicata. It is from this order that the Murphys appeal and Alan Murphy cross-appeals.
 STATEMENT OF THE FACTS
Alan and Vicki Murphy were married on February 11, 1986, and a son, Samuel Murphy was born of this marriage on November 20, 1986. The genesis of this battle over the custody of Samuel began with the divorce of Alan and Vicki Murphy. On April 8, 1988, the two adults were granted a divorce on the grounds of irreconcilable differences and pursuant to the decree, entered into a property settlement agreement which in part set forth the terms and conditions to govern the custody of their minor son, Samuel. Alan was awarded the permanent and exclusive care, custody, and control of Samuel subject to visitation rights of Vicki. As part of their agreement, it was set forth that "the visitation rights of Vicki Murphy are personal to her exclusively." In addition, she agreed to pay $10.00 per week as support for Samuel. After his parents divorced, Samuel spent a great deal of time at the home of his grandparents, the Murphys. Several witnesses, including Rachel Murphy and David Waddell, testified that after his parents divorced, Samuel stayed at the Murphys' home for long periods of time.
After the divorce and sometime in April of 1990, Vicki and Alan, although divorced at this time, once again lived together under the same roof as husband and wife. Alan and Vicki continued in this arrangement until sometime in June of 1990. In the early part of July 1990 Alan began living with Pam Murphy. The two married on September 8, 1990.
The Murphys claimed that from the time Alan and Vicki divorced in April of 1988, and until they filed their petition in chancery court in October of 1990, Samuel was neglected, abused and subjected to viewing his father using drugs. The Murphys also asserted that Samuel lived with them on their property for considerable periods of time. Alan claimed that he provided and cared for Samuel and that his parents constantly interfered with, and attempted to adversely interfere with, the upbringing of Samuel. *Page 815 
In October 1990, allegedly as a result of his parents interference, Alan and his wife, Pam, and Samuel moved several miles away from the Murphy's home and into a trailer. Samuel lived in the trailer with his father and step-mother until the court ordered the change in custody in August 1992.
 DISCUSSION OF THE LAW
After careful review and consideration of all the issues raised on both the appeal and cross-appeal, we find only two issues meriting discussion.
 I. THE CHANCELLOR COMMITTED MANIFEST ERROR IN FINDING BOTH PARTIES UNFIT AND INCAPABLE OF HAVING PERMANENT CUSTODY OF THE MINOR CHILD AND AWARDING THE PALMER HOME FOR CHILDREN THE PERMANENT CARE AND CUSTODY OF THE MINOR CHILD
A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses.West v. Brewer, 579 So.2d 1261, 1263-64 (Miss. 1991); RiceResearchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss. 1987);Polk v. Polk, 559 So.2d 1048, 1049 (Miss. 1990). On appeal, this Court is required to follow the "substantial evidence/manifest error" standard of review. West, 579 So.2d at 1264, quoting Stallings v. Bailey, 558 So.2d 858, 861 (Miss. 1990). This Court does not sit to redetermine questions of fact.Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985). Further, we will not disturb a chancellor's findings of fact when supported by substantial evidence unless an erroneous legal standard has been applied or is manifestly wrong. Westbrooke v. Oglesbee,606 So.2d 1142, 1145 (Miss. 1992); Phillips v. Phillips,555 So.2d 698, 701 (Miss. 1989). Finally, when substantial evidence supports the chancellor's findings, we will not disturb his conclusions, notwithstanding that we might have found otherwise as an original matter. Jim Murphy Associates, Inc. v. LeBleu,511 So.2d 886, 894 (Miss. 1987), aff'd 557 So.2d 526 (Miss. 1990).
In the present case, the chancellor agreed to expedite the matter by permitting the attorneys to offer summarized testimony of vital witnesses, including Clearmon Murphy and Pam Murphy. Mr. Jacob, Alan Murphy's attorney, described the summarized procedure:
 The parties are stipulating that this would be the testimony that would be presented, not so much for the truth of the statements being made by counsel as to absolute facts; but that this is what each of us believes that the testimony would reveal, on the various witnesses.
Mr. Chaze, as attorney for the Murphy's, further commented on the agreed upon procedure:
 I think Mr. Jacob may have inadvertently said that the stipulation is offered `not so much for the truth', and I do want to extenuate that the testimony is simply one side's expected view of what the testimony would adduce . . . what the testimony would be if the witnesses actually took the witness stand.
As this case involves custody of a child of tender years who was made a ward of the state, the focus and purpose of the entire proceeding was to determine fitness and/or unfitness of the child's father and paternal grandparents. The chancellor rendered his opinion based on the summarized testimony of what theattorneys believed the remaining witnesses would have said ornot said. Because the issue of fitness turns on the credibility, presentation and demeanor of these witnesses, the chancellor was the sole authority to judge issues of credibility. The chancellor, having agreed to the summarized procedure, was not in a position to hear firsthand the testimony of the remaining witnesses. Furthermore, the testimony of Clearmon Murphy, Pam Murphy and the social workers was pivotal in reaching the ultimate decision as to fitness of all the parties. The chancellor, in utilizing the summarized testimony, was clearly not in a position to view the demeanor and judge the credibility of these witnesses. Therefore, he failed to fully assess and consider the parties' fitness and abilities to care for the minor child. *Page 816 
 II. THE LOWER COURT ERRED IN ITS REFUSAL TO HEAR AND CONSIDER ADDITIONAL EVIDENCE AND TESTIMONY AT THE HEARING ON APPELLANT'S MOTION FOR A NEW TRIAL
During the subsequent hearing on the Motions for New Trial, the chancellor refused to permit the Murphys to submit additional testimony and evidence stating that the previous orders rendered the issue of fitness res judicata:
 You can't open cases. You can appeal them or you can have modifications on change of circumstances, and that is not what you relied on. You are trying to go back and add more to it. I wish I had some proof on this before. I wish it were there. It wasn't. It is too late. . . .
 There is a Final Order in this case, not immediately following the Opinion, but there is a Final Order here. . . .
 You will not find any authority that will let you come in when you desire . . . and present new proof for me to consider that new proof and recharge and change that Order. That kind of authority does not exist in this State.
While it is possible that the Chancellor was correct in rendering all parties seeking custody unfit, he was incorrect in rendering the issue of the parties' fitness res judicata. In child custody cases, the chancellor's duty is to determine what is in the best interest of the child. As such, chancellors should consider any and all evidence which aids them in reaching the ultimate custody decision. The present case had not yet proceeded to final judgment, and therefore additional testimony and evidence was admissable pursuant to Rule 54(b) and Rule 59(a) of the Mississippi Rules of Civil Procedure.
In the case sub judice, the chancellor would not have trampled upon the laws of this State by hearing the additional testimony and considering the expert reports submitted by the social workers. When the best interest of a minor child is at issue, the ability to hear and consider additional evidence is at all times within a chancellor's authority. See Bell v. Bell,572 So.2d 841, 845 (Miss. 1990). We further suggest that a chancellor go to great lengths in order to find a suitable home for a minor child before institutionalizing that child. We realize that the chancellor attempted to accomplish the best for the child in this case, however, he should have heard and considered all the relevant testimony and evidence which contribute to determining which party (if any) is best suited to assert permanent care, custody and control over the minor child. In matters concerning child custody, it is never too late for additional evidence and testimony to be considered. The polestar consideration is what is in the best interest of that child.Westbrooke v. Oglesbee, 606 So.2d 1142, 1146-47 (Miss. 1992);Polk v. Polk, 589 So.2d 123, 129 (Miss. 1991); Bell v. Bell,572 So.2d 841, 846 (Miss. 1990); Carr v. Carr, 480 So.2d 1120, 1123 (Miss. 1985); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
Further, we are compelled to note that prior to the hearing at which alternatives to custody were examined, Alan Murphy moved the court to appoint a guardian ad litem to represent his son's interests. The court held this motion in abeyance and no guardian served to represent the minor child at the hearing. Because the lower court is directed to revisit and reconsider the issue of fitness, we suggest that a guardian ad litem be appointed before the final custody determination is made.
 CONCLUSION
In reversing this case, the chancellor is instructed to revisit the question of fitness of all parties so that all of the testimony and evidence pertaining to fitness and/or unfitness of the respective parties can be considered. In addition, Appellee has raised the issue of attorney's fees as part of this appeal. As this case requires reversal for additional findings to be made, the chancellor can reconsider the issue of attorney's fees at such time.
REVERSED AND REMANDED. *Page 817 
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.