THOMAS, J.,
for the Court:
¶ 1. Sarah A. Hopper and Louis Reid Hopper were granted a divorce based upon irreconcilable differences on December 11, 1993. On February 18, 1998, Sarah filed a motion for modification and other relief against Reid.
¶ 2. On June 18, 1999, the Harrison County Chancery Court entered its final order. The court found that the marital home should be immediately placed on the market for sale, as anticipated by the original agreement for divorce. Also, after considering the income of Reid, the court increased child support from $175 to $220 per month. Since the deductible for health insurance policy on the child went from $200 to $350, the court ordered that Sarah would be required to pay only $100 of the hospitalization and medical insurance deductible, and the Reid would be required to pay $250. The court found that Reid had provided the necessary proof of $100,000 life insurance policy, and that the provisions allowing Reid to claim the minor child as a dependant for tax purposes should remain unchanged. Sarah made a claim against Reid for the payment of innumerable minor expenses related to the ownership, upkeep, and day-to-day maintenance. The court found that this claim was without merit. Sarah next requested an accounting of all the accounts which had been in existence for the benefit of the child’s education. The court found that the only account still in existence was a Templeton account which only had a small remaining balance. A $1,000 savings bond Sarah claimed for the children was non-existent. A Merchant’s account was not in Reid’s name; he had no control over it, and it had been closed by those who did own the account. Further, Reid received no income or money from that account. Therefore, the court denied this request. Sarah asked that she be granted the benefit of any tuition tax credits available; however, since no information was furnished in this regard and the court having no knowledge of what rules and regulations Sarah was referring to, denied the same. The court found that Reid had violated the terms of the original divorce decree and ordered that Reid pay $20 in softball related expenses, and one and a half months in child support in the amount of $175. The court assessed all court costs and attorneys’s fees to Reid. On appeal Sarah argues
I. REID HOPPER SHOULD HAVE BEEN REQUIRED TO PAY THE COLLEGE EXPENSES FOR LINDSAY HOPPER EQUAL TO THE $1,000 SAVINGS BOND AND THE MERCHANT’S BANK ACCOUNT AND ACCRUED INTEREST.
II. REID HOPPER SHOULD HAVE BEEN ORDERED TO PAY THE REASONABLE AND NECESSARY HOUSEHOLD AND PROPERTY MAINTENANCE AND EXPENSES.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. Sarah and Reid were married on July 15, 1972. During the term of the marriage, the couple had one child, Lindsay Hopper, born November 29, 1979. They were divorced on the grounds of irreconcilable differences. Attached to the final decree of divorce was a child custody and property settlement agreement to which the Chancery Court of Harrison County incorporated and made part of the decree. In this settlement agreement, among other issues, the parties agreed that Reid should maintain the residential property in the same manner that it was maintained during its ownership by the parties. Reid was to provide all labor on maintenance which had been provided by him or through Hopper Tire, his business, in the past so that the house and property were kept in good repair. The parties agreed that parts, materials, and extraordinary labor which required expertise beyond that available to Reid or his business should be divided equally between the parties until the sale of the house.
¶ 5. The settlement agreement also provided that Reid “shall have use and possession of the contents of the Merchants Bank *397 money market account.... That all accounts which are currently in existence for the benefit of Lindsay Hopper shall not be incumbered, reduced or otherwise ameliorated and shall be used for the higher education of Lindsay Hopper.”
¶ 6. During the proceeding of this matter, Sarah testified that she wished to be reimbursed for expenses that she incurred on the maintenance of the residential property in which she still resided. These expenses included items such as fertilizer, ant killer, and pesticides. The total expenses for these sundry items, incurred over the five years since the original divorce, came to $1,835.50.
¶ 7. In the original settlement agreement, three accounts were listed that were not to be encumbered, reduced, or otherwise ameliorated. First listed were two Templeton accounts, a $1,000 savings bond beside which was written “Whereabouts unknown at this time,” and a Merchant’s Bank account belonging to W.C. Hopper and Gloria Hopper, Reid Hopper’s parents.
¶ 8. Sarah testified that part of the consideration to settle their differences was that Reid agreed that certain accounts would be used for Lindsay’s higher education expenses. Once the accounts were exhausted, Sarah would pay one-half of Lindsay’s college expenses. The Temple-ton account was used towards Lindsay’s first semester of college and virtually all but depleted. However, neither the $1,000 savings bond nor Merchant’s Bank account were used for Lindsay’s benefit. On cross-examination, Sarah admitted that when she signed the original settlement agreement she knew that the Merchant’s Bank account was owned by the grandparents.
¶ 9. Reid testified that he knew nothing about a $1,000 savings bond, and that he had no access or control over the Merchant’s Bank account, as his name was not listed on the account. In fact, when trying to investigate the account, Reid found that the account was closed.
¶ 10. The chancellor found that the original property settlement agreement required Reid to maintain the residential property in the same manner that it had been maintained during the ownership by the parties, and concluded that the settlement referred to the upkeep, maintenance, and repair of the home. The chancellor held that this maintenance did not include such things as poison for ants, flowers, upkeep of the yard, and other such incidentals. He denied Sarah’s request.
¶ 11. The chancellor found that the only account still in existence at the time of the trial was a Templeton account which still had a small remaining balance. The $1,000 bond was non-existent, the Merchant’s account was not in Reid’s name; he had no control over it, and it had been closed out by those who did own the account. Further, that Reid received no income or money from that account.
STANDARD OF REVIEW
¶ 12. “Domestic relations matters are among the most difficult cases dealt with by our chancellors; therefore, the standard of review employed by this Court in these cases is very limited- and abundantly clear.” Pullis v. Linzey, 753 So.2d 480 (¶ 7) (Miss.Ct.App.1999). “Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court’s actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.” Id. (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)).
I.
REID HOPPER SHOULD HAVE BEEN REQUIRED TO PAY THE COLLEGE EXPENSES FOR LINDSAY HOPPER EQUAL TO THE $1,000 SAVINGS BOND AND THE MERCHANT’S BANK ACCOUNT AND ACCRUED INTEREST.
¶ 13. Sarah argues that the parties entered into a child custody and property *398 settlement agreement which is a contract. Pursuant to the contract, Reid was to provide a $1,000 savings bond and a Merchant’s Bank account for Lindsay’s higher education. Reid counters that in the original property settlement his name did not appear on the Merchant’s Bank account and he had no control over the account. On the original settlement agreement listed beside the $1,000 was “Whereabouts unknown at this time.” Reid testified that he never knew of the existence of a $1,000 bond.
¶ 14. Clearly stated on the original settlement agreement below Merchant’s Bank account is the note: “This account belongs to W.C. Hopper & Gloria Hopper under the UGTMA, Lindsay Hopper.” Sarah admitted during the current proceeding that she knew the account was owned by W.C. and Gloria Hopper, Lindsay’s paternal grandparents. Whatever Sarah and Reid contracted to do originally in their settlement agreement, the owners of the account, W.C. and Gloria Hopper were not part of the original agreement. W.C. Hopper subsequently died, and Gloria was not made part to this second proceeding. Notwithstanding the fact that Sarah and Reid may have intended the account be used for Lindsay’s college, neither were the custodians of the account. Although the parties contracted to use this account for the purpose of Lindsay’s college, the settlement agreement did not effect a transfer of ownership in this account. The parties could not transfer what they did not own.
¶ 15. The legal control of this account, and later closure of the account, was done by the custodians of the account, not Reid. If we were to discuss Sarah’s claim seeking payment of the funds formerly in the Merchant’s Bank account titled UGTMA, or Uniform Gifts to Minors Act, an account established in Lindsay’s name, we would be guided by the UGTMA. See Miss.Code Ann. § 91-19-11 (Rev.1994) (repealed 1995). However, the dispute that the funds in this account were not properly “deliverfed] or pa[id] to the minor or expend[ed] for the minor’s benefit .... ” and any subsequent transfers or invasion of this irrevocable gift which conveys to the minor an infeasible vested legal title is not properly before this Court, as the custodians for this account were not made parties to this proceeding.
¶ 16. As to the $1,000 savings bond, again turning to the original settlement agreement, the parties acknowledged that the whereabouts of the bond was unknown at that time. Reid testified that he never had a $1,000 savings bond, never saw one, and was unaware of a third party having one for Lindsay. “A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses.” Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994) (citations omitted). We do not redetermine questions of fact. Id. We find that chancellor committed no error.
II.
REID HOPPER SHOULD HAVE BEEN ORDERED TO PAY THE REASONABLE AND NECESSARY HOUSEHOLD AND PROPERTY MAINTENANCE AND EXPENSES.
¶ 17. Sarah argues that Reid should pay for such things as ant poison, roach spray, Round Up, Weed B Gone, wasp and hornet spray, fertilizer, and oil and gas for the mower, as these are things that maintain the home and property in the condition it was during the course of the marriage. Reid counters that these items are merely incidentals that are not part of the upkeep, maintenance, and repair of the home. Our job on appeal is not to sit as fact-finder. We find the chancellor committed no manifest error when he found that these expenses were merely incidental expenses not considered in the original settlement agreement.
¶ 18. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS *399 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.