McMILLIN, C.J.,
for the Court.
¶ 1. This is a custody case concerning a young child whose father is deceased. The chancellor found that the child’s mother was unfit to have primary custody of the child and, instead, awarded custody to the child’s paternal aunt. In addition to the natural mother’s efforts to have custody of the child, the child’s maternal grandmother also appeared in the action asking that, if the mother’s request for custody was denied, then custody be awarded to her as the next closest living kin. Both the mother and maternal grandmother have appealed the decision of the chancellor. Upon reaching the conclusion that the chancellor’s decision is within the discretionary authority afforded him in such matters, we affirm.
I.
Facts
¶ 2. The child in this case, Hayden Bradley Smith, was born on December 31,1998, to Michelle Loomis and Jason Smith. At the time of the custody hearing in the proceeding, the mother, Ms. Loomis, was twenty-three years of age, and the father was deceased.
¶ 3. The proceeding was commenced jointly by one of the child’s paternal grandmothers and the deceased father’s sister (and, thus, the child’s aunt, Angela Bugg). The complaint sought a judgment making an award of custody of the child to Mrs. Bugg. Parties to the proceeding besides those already named included the child’s maternal grandmother, Terri For-rester. Mrs. Forrester’s husband was a party to the proceeding at the trial level, but he has not appeared before this Court as a party to the appeal.
¶ 4. The proceeding was commenced by the previously-identified relatives of the deceased father seeking an award of custody of the child based on the contention that the natural mother, Ms. 'Loomis, was an unfit person to have' custody and that the best interest of the child would be served by awarding custody to Mrs. Bugg. Mrs. Forrester entered an appearance to assert a claim that if custody were not awarded to Ms. Loomis, then the next best alternative for the child would be that custody be awarded to her and her husband.
¶ 5. Evidence was presented that showed that Ms. Loomis had experienced a rather unstable lifestyle since the death of Mr. Smith. She had moved repeatedly, been involved in the use of illegal narcotics including marijuana and crystal metham-phetámine, and had entered into multiple relationships with men to whom she was not married, including an extramarital relationship with a married man. Her employment history was similarly unstable, and there was evidence that she haphazardly left the child in the care of various relatives from time to time. No witnesses were presented who offered the view that Ms.' Loomis was an appropriate person to have the primary custodial care of the *696 child. Rather, the thrust of the evidentia-ry hearing appeared to be in the nature of a contest for custody between relatives of the deceased father and relatives of the mother, Ms. Loomis.
¶ 6. At the conclusion of the hearing, the chancellor found that it had been shown by clear and convincing evidence that Ms. Loomis, in her present situation, was not a fit parent to have primary custody of the child. The chancellor then analyzed the various' competing considerations in making an appropriate custody determination that would advance the best interest of the child, using the factors commonly known in the jurisprudence of-this State as the “Al-bright factors” and concluded that an award of custody to Mrs. Bugg was appropriate. The court ordered visitation rights both to Ms. Loomis and to both grandmothers. Ms. Loomis’s visitation rights were restricted to the extent that they had to be exercised at a time when her mother, Mrs. Forrester, was present to supervise the visitation.
¶ 7. Both Ms. Loomis and Mrs. Forres-ter had appealed from that .determination by the chancellor. The appeal presents four issues for consideration. They are (a) whether the chancellor erred in finding Ms. Loomis to be unfit to have custody of her child; (b) whether it was reversible error for the „ chancellor to refuse to appoint a guardian ad litem for the child; (c) whether the award of custody to Ms. Bugg was an abuse of discretion; and (d) whether the chancellor committed an abusé of discretion in his applying the Albright factors.
¶ 8. For reasons we will proceed to set out, we find no error and affirm the chancellor.
II.
Denial of Custody to the Natural Mother
¶ 9. There exists in the law a presumption that the natural parents are the best caregivers for their children and, therefore, ought to have primary custody. Westbrook v. Oglesbee, 606 So.2d 1142, 1144-45 (Miss.1992). The chancellor may remove a child from the custody of a natural parent upon reaching the conclusion that'the custodial parent is unfit to perform the role of parent. Id. The proof demonstrating this unfitness must be greater than a mere preponderance and, rather, must rise to the level of being clear and convincing. Miss.Code Ann. § 93-15-109 (Supp.2003); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1081(¶11) (Miss.2000). Nevertheless, the chancellor, sitting as finder of fact and hearing the evidence first hand, is best positioned to make critical determinations of witness credibility and to decide what weight and worth to afford any particular part of the proof. Polk v. Polk, 559 So.2d 1048, 1049 (Miss.1990). Those findings and conclusions are entitled to deference on appeal, and we may reverse only if we find that the chancellor was manifestly wrong or applied an incorrect legal standard. E.g., Sellers v. Sellers, 638 So.2d 481, 483 (Miss.1994).
¶ 10. In this case, there was ample evidence presented to show that this child’s mother had led an unstable life, including use of illegal narcotics, for an extended period of time and that her attention to the welfare of her child appeared to be of secondary interest to her. Rather, she was content to leave the day-to-day care of the child to relatives for over half the time since the death of the child’s father. In that situation, and without any compelling evidence to the contrary, we are unconvinced that the chancellor either ' (a) applied an improperly lower standard of proof or (b) was manifestly erroneous in assessing the weight *697 and worth of the evidence such that his decision to award custody to Mrs. Bugg would constitute an abuse of discretion. In that situation, we can find no reason to disturb the chancellor’s determination.
III.
Failure to Appoint a Guardian ad Litem
¶ 11. There were no accusations of abuse or neglect of the child insofar as the evidence went to the care the child was receiving when in the control of family members other than the natural mother. There were no allegations that the physical arrangements offered for the care of the child by any of the competing family members was somehow inadequate or even questionable. Thus, there did not appear to be a need for the sort of neutral investigatory work that is typically performed by a guardian ad litem in a disputed custody proceeding. Rather, it would seem that essentially all a guardian ad litem could have done was to consider the same information that was presented to the chancellor in open court and then offer the guardian’s opinion as to what arrangement would best serve the child’s interest.
¶ 12. Except in cases where there are legitimate issues of abuse or neglect, the appointment of a guardian ad litem remains a matter vested in the sound discretion of the chancellor. Miss.Code Ann. § 93-5-23 (Supp.2003); Scroggins v. Riley, 758 So.2d 467, 472(¶ 19) (Miss.Ct.App.2000). Because of the apparently limited assistance a guardian ad litem could have rendered in this case, we cannot agree that the chancellor’s decision against making such an appointment constituted such an abuse of discretion as to constitute reversible error.
IV.
Abuse of Discretion in Awarding Custody
¶ 13. We combine our consideration of the final two issues raised in appellants’ brief because they both raise essentially the same issues. Once the chancellor determined that the child’s sole surviving natural parent was not fit to have, custody of the child, it became the chancellor’s duty to make a decision as to custody that would be guided by the single overriding concern of what would be in the best interest of the child. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1990).
¶ 14. The Mississippi Supreme Court has identified a number of specific factors that the chancellor must consider in the process of reaching that ultimate decision, and they have come to be widely known as the “Albright factors,” having first been succinctly set out in the case of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 15. In this case, the chancellor, in making his ruling from the bench, gave a lengthy and detailed statement of each Albright factor followed by his analysis of the evidence relevant to that particular point. It is evident that the chancellor conducted a thorough review of the available evidence and offered well-thought-out conclusions as to how that evidence factored into the relevant Albright factors. In the end, the chancellor appeared to give some weight to the fact that the child’s maternal grandmother, during previous times when she had the care of the child, did not appear to be sufficiently concerned regarding the circumstances in which Ms. Loomis was living when she would exercise one of her sporadic periods of taking physical custody of the child. Operating on the premise that the best predictor of future behavior is past behavior, the chancellor expressed concern that the pattern would be continued — a situation that the chancellor concluded would not advance the child’s best interest.
*698 ¶ 16. The appellants’ argument that the chancellor abused his discretion in awarding custody consists primarily in taking issue with this contention, pointing out that the maternal grandmother had more continuity of care of the child than did the paternal aunt and in asserting that the grandmother, being nearer in kinship, should be afforded some preference in the custody award.
¶ 17. We do not think that the chancellor’s concerns regarding the future care of the child if custody was given to the maternal grandmother were so baseless that it would constitute an abuse of discretion to factor them into the custody determination. Having said that, it then becomes logically apparent that any claim of advantage based on continuity of care simply disappears. Finally, we are aware of no hard and fast rule that gives preference in a custody dispute such as this to any particular litigant based solely on the degree of kinship. Certainly, it would not be in error to factor in kinship as one consideration because of the natural affection that almost universally flows between family members; however, the simple fact that Mrs. Bugg was a slightly more distant relative than Mrs. Forrester, standing alone, would not seem to give any particularly strong advantage to Mrs. Forrester. Without something more to cast doubt on the chancellor’s explanation of his decision regarding custody, we do not find reversible error in the failure to award custody based solely on degree of kinship to the child. Based on our limited scope of review in matters such as this that are entrusted to the sound discretion of the chancellor, we do not find any basis to disturb the chancellor’s determination.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ„ CONCUR.