BEAM, Justice,
concurring in part and in result:
¶ 59. I agree with the majority that there is insufficient evidence to support *1203 the youth court’s order adjudicating J.T. a sexually abused child. I disagree, however, with the majority that the rules of evidence must apply in youth-court adjudications with the full force and effect as in other civil cases. Accordingly, I concur in part and in result to the majority’s opinion.
¶ 60. As set forth in Mississippi Code Section 43-21-103, the primary goals of the Youth Court Law are to protect each child coming within the jurisdiction of the youth court and to “facilitate reuniting the family, if found to be in the child’s best interest.” B.A.D. v. Finnegan, 82 So.3d 608, 616 (Miss.2012) (citing Miss.Code Ann. § 43-21-103). “In every child-custody matter, the pole§tar consideration is the best interest of the child.” Id. (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)). This focus does not change in youth-court matters involving DHS and is the legal standard in every such case. See In Interest of R.D. v. Linda D., 658 So.2d 1378, 1387 (Miss.1995).[31] This standard is more than a statement of the primary criterion for decision or factors to be considered in a youth-court proceeding; it is a declaration of the court’s special responsibility to safeguard the interests of the child.
¶ 61. Judge Cardozo well articulated this responsibility years ago in a New York custody dispute, where the Court of Appeals of New York rejected the notion that such cases should fall under a remedy of action. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937 (1925). Judge Cardozo explained:
The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against any one. He acts as parens patriae to do what is best for the interest of the child. He is to put himself in the position of a “wise, affectionate, and careful parent” and make provision for the child accordingly— He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights “as between a parent and a child,” or as between one parent and another.... Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child.
Id. at 433, 148 N.E. 624.
¶ 62. In keeping with this obligation, this Court has instructed youth-court judges to consider any and all evidence which aids them in reaching the ultimate determination in youth-court matters. In re V.R., 725 So.2d 241, 247 (Miss.1998) (citing Murphy v. Murphy, 631 So.2d 812 (Miss.1994)). When a child’s best interest is at issue,' judges do “not ... trample[ ] upon the laws of this State by hearing additional testimony and considering the expert reports submitted by social workers.” Murphy, 631 So.2d at 816. While the need for information necessary to determine a child’s best interest does not allow judges to ignore the rules of evidence, precise rules of evidence should be relaxed somewhat in proceedings where the welfare of children is involved. 67A C.J.S. Parent and Child § 106 (2013).
*1204 ¶ 63. Indeed, both Mississippi Code Section 43-21-559 and Mississippi Rule of Youth Court Practice 24(b)(5)® expressly allow testimony to be in narrative form in adjudicatory proceedings, as opposed to the usual question-and-answer format. Further, since a youth court judge sits without a jury both as trier of fact and arbiter of the law, how a judge receives evidence for its determination (and the record) logically should be less circumscribe so long as the evidence is shown to be competent.
¶64. Here, this case involved a statement made by J.T. to a day-care worker, and then to a forensic interviewer with the Child Advocacy Center (CAC) after DHS was notified. The forensic interviewer did not testify at the adjudication hearing. Her report, however, was admitted through Cirby Scott, the DHS family protection worker, who was present at and witnessed the forensic interview. The parties did not dispute what J.T. said, either at the day-care center or at the CAC. The only issue presented was the context of J.T.’s statement(s). Based on the evidence, that could not be determined. And the youth-court erred in concluding otherwise. The youth court did not err by admitting for consideration evidence of J.T.’s statement. That J.T. had made the statement was based on competent evidence. But, while competent, it was not-on its own-sufficient as proof that J.T. had been sexually abused by her father. Applying the rules of evidence with full force and effect of technicality would not have changed this fact, and quite arguably could have obscured the record otherwise had they not been relaxed in this proceeding.
¶ 65. For example, as the majority correctly notes, Scott’s DHS report technically was not admitted into evidence. That report, however, illustrated for the record that there was no substantial evidence to support DHS’s petition. Indeed, it allowed the majority to conclude that the child’s statement was “facially ambiguous.”
¶ 66. The CAC report, contained in the DHS report, concluded that the forensic interviewer could not “determine the context of [the] touches” disclosed by J.T. And the Children’s Justice Center (CJC) report, also contained in the DHS report, could “neither confirm[ ] [n]or den[y] previous maltreatment” of J.T.
¶67. On appeal, the appellants claim evidentiary error on the part of the youth court for accepting these reports into evidence. But the appellants then point to these reports as evidence showing that the context of J.T.’s statement was indeterminate.
¶ 68. This type of dualism occurred throughout the adjudication hearing from all sides, resulting in unnecessary eviden-tiary-procedural minutia for the youth court to contend with.
¶ 69. That said, I do not disagree with the majority that, in order to admit a child’s out-of-court statements, the youth court must determine whether the testimony “falls within any of the hearsay exceptions enumerated in M.R.E. 803.” See Maj. Op. at ¶ 47; (In re C.B., 574 So.2d 1369, 1371-72 (Miss.1990)). I note that, at one point in the hearing the youth court indicated that, because a child under age twelve is rebuttably presumed to be of tender years (for purposes of Rule 803(25)(a)), no factual determination need be made as to the reliability of the child’s out-of-court statements (for purposes of Rule 803(25)(b)). This, of course, is incorrect. Apart from the tender-years presumption, any out-of-court statement made by an alleged neglected or abused child must bear substantial indicia of reliability in order to be admitted as evidence under Rule 803(25)’s hearsay exception. But any error in the youth court’s misinterpreta *1205 tion of Mississippi law was harmless, as it was made in reference to the CAC report, which was nonetheless admissible.
¶ 70. Citing In re C.B.,[32] the appellants claim the youth court deprived D.T. of his constitutional right(s) to confrontation in violation of the Sixth Amendment to the United States Constitution and Article. 3, Section 26 of the Mississippi Constitution, along with Mississippi Code Section 43-21-203(9), and Mississippi common law. The appellants contend that the youth court accepted evidence of a testimonial nature, whose “maker” did not testify in person and was not subject to cross-examination.
¶ 71. In the case In re C.B., this Court said, “we are of the opinion that the right to confrontation should be accorded to an accused parent” in youth-court cases. In re C.B., 574 So.2d at 1374. This was no-nauthoritative dicta. The Confrontation Clauses under either the United States Constitution or the Mississippi Constitution were not at issue in that case. The only authority In re C.B. cited for that notion was Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Craig was a criminal case, in which the Supreme Court held that the Sixth Amendment did not prohibit a child witness from testifying against the defendant at trial outside the defendant’s physical -presence, by one-way, closed-circuit television. Id. at 857, 110 S.Ct. 3157.
¶ 72. Both' the Sixth Amendment and Section 26 express only “criminal prosecutions.” See U.S. Const. amend. VI; Miss. Const, art. 3, § 26. A youth-court adjudication to determine the alleged neglect or abuse of a child is not a criminal prosecution but a civil proceeding. Miss.Code Ann. § 43-21-559 (Rev.2015). The Confrontation Clause(s) under either the United States Constitution or . Mississippi’s Constitution do not apply in such proceedings. See, e.g., Hannah v. Larche, 363 U.S. 420, 440 n. 16, 80 S.Ct. 1502, 1513 n. 16, 4 L.Ed.2d 1307 (1960) (noting that protections afforded by the Sixth Amendment are “specifically limited to ‘criminal prosecutions’ ”) (quoting United States v. Zucken 161 U.S. 475, 481, 16 S.Ct. 641, 643, 40 L.Ed. 777 (1896)); Ullom v. Davis, 169 Miss. 208, 150 So. 519 (1933) (holding that the Confrontation Clause under Section 26 has no application in a habeas corpus proceeding because such proceedings are not “criminal prosecutions”).
¶ 73, Also, In re C.B. was decided before Rule 803(25) was effectively adopted in 1991, and is therefore limited — for all intents and purposes — in its usefulness. It does, however, point to Rule 803(24),[33] viewed at the time as “the catch-all exception” to out-of-court statements. In re C.B., 574 So.2d at 1373. In his treatise' *1206 Williams on Mississippi Evidence, Parham Williams speaks to the purpose behind Rule 803(24), along with Rule 804(b)(5):
Recognizing that the law of evidence is dynamic and must be flexible in order to respond to new developments in business and technology, the framers of the Federal Rules and the Mississippi Rules sought to provide such flexibility in their respective residual exception clauses [MRE 803(24) and 804(b)(5), and FRE 807]. The two Mississippi rules are identical in both language and content; and should be combined into one rule as was done with the corresponding Federal Rules in 1997.
Parham Williams, Williams on Mississippi Evidence § 8.57, at 8-92 (2016 ed.).
¶ 74. As this case illustrates, it was unnecessary for the authors of the CAC report and the CJC report to testify in this matter. That, of course, is not to say that experts are not needed in any youth-court case. When they are, though, depends on the facts and circumstances of that particular case. Our chancellors and youth-court judges are more than capable of making that determination.
¶ 75. For these reasons, I concur in part and in result.
RANDOLPH, P J., JOINS THIS opinion: waller, c.j., and MAXWELL, J., JOIN THIS OPINION IN PART. •

. As noted in K.M.K. v. S.L.M. ex rel. J.H., 775 So.2d 115, 118 n. 2 (Miss.2000), "[t]he youth court has different divisions.” (citing Miss.Code Ann. § 43-21-107 (1993)). One division is the county court, "presided over by the county court judge or a judge chosen by the county court judge, in those counties that have a county court." Id. Another division, in counties in which no county court is maintained, is the chancery court, "presided over by a chancellor or a youth court referee.” Id. (citing Miss.Code Ann. §§ 43-21-107, and 43-21-111).

. In re C.B. was a youth-court matter involving a sexual-abuse petition.

. Rule 803(24) states that "the following are not excluded by the hearsay rule, even though declarant is available as a witness:”
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
M.R.E. 803(24).