FAIR, J., for the Court:
¶ 1. The Rankin County Chancery Court granted Josh Carter’s petition to modify the custody of his six-year-old daughter, Delaney, who had been in the care of her mother, Jennifer. On appeal, Jennifer asserts a single error. She contends that the chancery court erred in not appointing a guardian ad litem, sua sponte, to investigate what she argues were Josh’s allegations of neglect. We find that the allegations were either not severe enough to require investigation or were adequately investigated by an agent of the court who acted as a guardian ad litem in all but name. We affirm.
DISCUSSION
¶2. Josh and Jennifer Carter divorced in Rankin County in 2011, and Jennifer got custody of Delaney. After the divorce, Jennifer changed jobs and moved several times, ending up living near her mother near Lumberton, Mississippi, about two hours south of the Carters’ original home.
¶ 3. In May 2012, Josh filed a complaint for modification which alleged, without specificity, that there had been a material change in circumstances that had adversely impacted Delaney, tracking the language of the legal standard for custody modification. See, e.g., A.M.L. v. J.W.L., 98 So.3d 1001, 1015-16 (¶ 35) (Miss.2012). As the litigation progressed, two bases for the finding of a material change in circumstances emerged: the condition of Jennifer’s residence, and Delaney’s health issues and care while in Jennifer’s custody.
¶4. About six months after filing his complaint for modification, Josh filed a “Request for Inspection” of Jennifer’s home, pursuant to Mississippi Rule of Civil Procedure 34. No basis for the request was stated on the motion’s face, and, although it appears to have been heard before the chancery court, the hearing on the motion was not transcribed or its substance otherwise made a part of the record on appeal. Following the hearing, the chancellor found that it would not be appropriate for Josh or his attorney to in *805 spect Jennifer’s property. Instead, he entered an order[1] appointing Heather M. Aby, an attorney, to inspect Jennifer’s home and submit a report to the court.
¶5. Aby prepared what she styled a “Report of Guardian Ad Litem” detailing her findings. She found that Jennifer and Delaney were residing in a one-bedroom mobile home that had been previously used by an auto repair shop. The building was “structurally unsound and in a state of disrepair.” In one place, the roof had been covered with a tarp, which was held down by an old tire. The inside was cluttered and bore stains from water intrusion, accompanied by what looked like mold. The yard surrounding the building was overgrown and littered with garbage, including old furniture and appliances, as well as a rusted metal fan .lying in high grass that Aby thought would be dangerous to a small child. Aby also inspected a building that was under construction on the property, which Jennifer called a “cabin” and her future home—Aby characterized it as a utility building or shed that was being half-heartedly converted into a residence, and she expressed concern that it could be a fire hazard because there was only one entry door (though it did fiave several small windows). Aby concluded that Jennifer’s home was “generally not safe for .a minor child,” and she recommended that it was not in Delaney’s best interest to live in either the mobile home or the cabin.
¶ 6. Aby testified at trial, and her report and accompanying photographs were introduced into evidence. The chancellor largely agreed with Aby’s report and recommendation, finding Jennifer’s home to be “shocking,” “squalid,” and “dangerous.”
¶ 7. Neither party ever asked the chancery court to appoint a guardian ad litem. Jennifer’s sole issue on appeal is her contention that the chancellor erred by not sua sponte- ordering the appointment of a guardian ad litem following Aby’s testimony regarding her home, which Jennifer contends amounted to an allegation she had neglected Delaney.
¶ 8. Josh argues that .this issue has been waived. He asserts that, at some point, the chancellor raised the issue of whether a guardian ad litem should be formally appointed, ■ and both parties agreed it was ■ unnecessary. But if this occurred, it was not transcribed or otherwise made a part of the record; and this Court cannot credit assertions in briefs in the absence of support in the record. Yancey v. Yancey, 752 So.2d 1006, 1012 (¶ 20) (Miss.1999).
¶ 9. Ordinarily, the decision of whether to appoint a guardian ad litem is entrusted to the sound discretion of the chancellor. Scroggins v. Riley, 758 So.2d 467, 472 (¶ 19) (Miss.Ct.App.2000). But when there are allegations of abuse or neglect in a custody dispute, the Mississippi Supreme Court has held that Mississippi law requires the chancery court to appoint a guardian ad litem to investigate the allegations. Floyd v. Floyd, 949 So.2d 26, 28 (¶ 7) (Miss.1995) (citing Miss.Code Ann. § 93-5-23 (Supp.2006)).
¶ 10. Neither Aby nor Josh expressly accused Jennifer of neglecting Delaney. Jennifer testified, without objection, that her home had been investigated by the Mississippi Department of Human Services and that the case had been closed. From the transcript, it appears that records from the Lamar County DHS may have been sent to the chancellor prior to the trial on the modification action, but, at *806 the beginning of the modification trial, the chancellor stated he had not yet opened what he had received. A discussion then apparently occurred off the record, and whatever records had been sent were never mentioned again on the record. The DHS records were not cited by the chancellor in his findings of fact, used by either party at trial, or otherwise made part of the record on appeal.
¶ 11. Assuming for the sake of argument that Aby’s testimony amounted to an allegation of neglect, we still find that no error occurred. Undoubtedly, Aby’s appointment was irregular and her instructions somewhat unclear. Her appointment was purportedly pursuant to Mississippi Rule of Civil Procedure 34, which allows inspection of property by a party or his attorney. The order, although reciting that the court found it inappropriate for Josh or his attorney to inspect Jennifer’s property, refers to Aby’s assignment as a “Rule 34 inspection” and required Josh to pay Aby’s fee. From this, Jennifer asserts that Aby “could easily be viewed” as Josh’s proxy or agent. But Jennifer does not actually make that argument—Aby, the parties, and the court all seem to have understood Aby to have been assigned to act as a neutral, investigative agent for the court; and at no point does she appear to have acted as Josh’s agent or advocate. Aby was ordered to report to the court, and she, initially at least, appears to have understood her assignment to be that of a guardian ad litem, as that was how she styled her report. At the modification hearing, the chancellor initially referred to Aby as a guardian ad litem before backing off that label to call her “an observer, basically, or someone to make a report.” The chancellor also recalled that Aby “was not formally appointed as an arm of the Court except for the limited issue of performing, I think, an inspection.”
¶ 12. Jennifer does not argue that a guardian ad litem should have been appointed to simply rehash the investigation undertaken by Aby. Instead, she argues that a guardian ad litem was required to present a “panoramic” investigation of Delaney’s circumstances. However, the Mississippi Supreme Court in the landmark decision of S.G. v. D.C., 13 So.3d 269, 280-81 (¶ 47) (Miss.2009), discussed the various roles a guardian ad litem can play in a chancery case, and it emphasized that the chancellor must have discretion in crafting the guardian ad litem’s duties to the specific needs of the case at hand:
In Mississippi jurisprudence, the role of a guardian ad litem historically has not been limited to a particular set of responsibilities. In some cases, a guardian ad litem is appointed as counsel for minor children or incompetents, in which case an attorney-client relationship exists and all the rights and responsibilities of such relationship arise. In others, a guardian ad litem may serve as an arm of the court—to investigate, find facts, and make an independent report to the court. The guardian ad litem may serve in a very limited purpose if the court finds such service necessary in the interest of justice. Furthermore, the guardian ad litem’s role at trial may vary depending on the needs of the particular case. The guardian ad litem may, in some cases, participate in the trial by examining witnesses. In some cases, the guardian ad litem may be called to testify, and in others, the role may be more limited.
In this case, Aby was appointed for a specific purpose—to investigate Jennifer’s home environment—just as the supreme court contemplated in S.G. v. D.C.
¶ 13. Jennifer also contends that Delaney should have been appointed a guardian ad litem to serve as her attorney. We *807 recently rejected the same argument in Jones v. Brown, 154 So.3d 919, 923 (¶ 13) (Miss.Ct.App.2015). This Court noted that the supreme court in S.G. v. D.C. had cited allegations of abuse or neglect as an instance where the guardian ad litem should serve as an investigator and an arm of the court, representing the child’s best interest in the stead of the child directly. Id, (citing S.G., 13 So.3d at 281 (¶ 48)). From our review of the record, that is exactly what Aby did, notwithstanding that she renounced the guardian ad litem label when she testified at trial. The example the supreme court gave of a case where the guardian ad litem should act as the child’s attorney was a will contest in which the child was a beneficiary. S.G., 13 So.3d at 282 (¶¶ 53-54) (citing In re Prine’s Estate, 208 So.2d 187, 192 (Miss.1968)). ■
¶ 14. This Court has held that the failure to appoint a guardian ad litem can be harmless error. See Loomis v. Bugg, 872 So.2d 694, 697 (¶¶ 11-12) (Miss.Ct.App. 2004). From our review of the record, we are satisfied that Aby, although not formally appointed a guardian ad litem, sufficiently fulfilled that role such that no reversible error resulted.
¶ 15. Jennifer also contends that the chancellor should have appointed a guardian ad litem to investigate what she characterizes as Josh’s claims she had neglected Delaney’s medical and nutritional needs. In particular, she cites to Josh’s attorney’s questioning of Dr. Naznin Dixit, a pediatrician who had treated Delaney, during her deposition (which was an evi-dentiary deposition submitted into evidence at the trial).
¶ 16. Our analysis of this issue is made more difficult because our supreme court has not elaborated on what sort of allegations are required, or when or how those allegations must be made, in order to make the appointment of a guardian ad litem mandatory. Neglect is difficult to define and could- arguably be present, to some degree, in-mundane allegations of imperfect parenting that should not demand investigation- by a guardian ad litem. Jennifer’s implicit argument that any suggestion of neglect requires the appointment of a guardian ad litem would- amount to a de facto rule that a guardian ad litem must be appointed in most custody disputes.
¶ 17. Because our supreme court has always predicated the guardian-ad-litem requirement on. the Mississippi Youth Court Law and related statutes, we look there for guidance. The Youth Court Law generally places exclusive original jurisdiction over “all proceedings concerning ... a neglected child [or] an abused child” in the youth court. Miss.Code Ann. § 43-21-151 (Supp.2014). But it. provides an exception for when proceedings related to the custody of the child have already been initiated in the chancery court. Section 43-21-151(l)(c) provides:
When a charge of abuse of a child first arises in the course of a custody action between the parents of the child already pending in the chancery court and no notice of such abuse was provided prior to such chancery proceedings, the chancery court may proceed with the investigation, hearing and determination of such abuse charge as a part of its hearing and determination of the custody issue as between the parents, notwithstanding the other provisions of the Youth Court Law. The proceedings in chancery court on the abuse charge shall be confidential in the same manner as provided in youth court proceedings.
Similarly, section 93-5-23 (Rev.2013) pro *808 vides in relevant part:[2]
The [chancery] court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney. Unless the' chancery court’s jurisdiction has been terminated, all disposition orders in such cases for placement with the Department of Human Services shall be reviewed by the court or designated authority at least annually to determine if continued placement with the department is in the best interest of the child or public.
Section 93-5-23 cites section 43-21-121(l)(e) (Rev.2009), which states in relevant part that “[t]he youth court shall appoint a guardian ad litem for the child .,, [i]n every case involving an abused or neglected child which results in a judicial proceeding.” Moreover, the Uniform Rules of Youth Court Practice apply to “any chancery court proceeding when hearing, pursuant to section 93-11-65 ... an allegation of abuse or neglect when that first arises in the course of a custody or maintenance action.” U.R.Y.C.P. 2(a)(2).
,¶ 18. We conclude that since the requirement of appointing a guardian ad li-tem in chancery cases derives from an exception to the youth court’s jurisdiction over abused or neglected children, to trigger the guardian-ad-litem requirement, the allegations of neglect must be of sufficient severity such that, if proven,' they would have triggered the youth court’s jurisdiction had there not already been proceedings in the chancery court. In other words, they must amount to an allegation that the child was a neglected child as defined by the Youth Court Law. It defines a neglected child as one:
(i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education • as required by law, or medical, surgical, ■ or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful'under any provision of this chapter; or
(ii) Who is otherwise without proper care, custody, supervision or support; or
(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or
*809 (iv) who, for any reason, lacks the care necessary for his health, morals or well-being.
Miss.Code Ann. § 43-21-105(0 (Supp. 2014).
¶ 19. Among children her age, Delaney was in the third percentile of height (within the “normal” range, but just barely) and below the third percentile in weight, which resulted in a diagnosis of “failure to thrive.” At the deposition, Josh’s attorney repeatedly asked Dr. Dixit questions regarding whether Jennifer’s home conditions or lack of attention to Delaney’s nutrition may have contributed to her being underweight. Josh also contended that Delaney gained weight while visiting him, only to lose it after returning to Jennifer. Dr. Dixit was very resistant to these suggestions; she testified that Delaney was diagnosed with failure to thrive based solely on her weight relative to her peers and that she could not find a reason for it. Dr. Dixit admitted that poor nutrition could have contributed, but there was no evidence of that, and at the time of her examination, Delaney appeared to have been gaining weight steadily and at the expected pace for some time. She noted also that Delaney had been born very prematurely, that both her parents were shorter than average, and that Josh’s method of weighing Delaney was unreliable. Dr. Dixit had found no evidence that Delaney was abused or neglected.
¶ 20. Aby, during her inspection of Jennifer’s home, had found the kitchen fully stocked with food, though she did not otherwise investigate whether Delaney’s nutritional needs were being met while in Jennifer’s care.
¶21. There was also testimony that Jennifer had missed or delayed numerous checkups for Delaney, particularly dental ones. And on one occasion, when Josh picked up Delaney, she was suffering from a fever. Jennifer told Josh she had consulted a doctor who had told her to watch Delaney’s temperature, but Josh took Delaney to the emergency room where she was diagnosed with strep throat that had .advanced to scarlet fever. Josh also asked questions regarding a style that had persisted near Delaney’s eye for several months.
¶ 22. The chancellor seems to have ultimately given little weight to these allegations, other than noting that Jennifer’s home environment could have had some harmful effects on Delaney and that Josh had been more attendant to her care. In his Albright[3] analysis, the chancellor found that Delaney’s health and related matters “slightly” favored Josh.
¶ 23. Given the wide range of conduct that could arguably constitute neglect, this Court has held that when neglect is not expressly alleged, the question of whether it has been effectively alleged is entrusted to the sound discretion of the chancellor. See Johnson v. Johnson, 872 So.2d 92, 94 (¶ 8) (Miss.Ct.App.2004). In this case, the chancellor clearly did not take the allegations and evidence presented regarding Delaney’s health and care in Jennifer’s custody as possessing the weight and severity of an allegation that she was a neglected child under the Youth Court Law, and we cannot say there was an abuse of discretion in the failure to appoint a guardian ad litem to investigate.
¶24. We conclude that no reversible error resulted from the chancellor’s not appointing a guardian ad litem sua sponte, and so we affirm the chancery court’s judgment.[4]
*810 ¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON and MAXWELL, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. There were actually two orders, with the first appointing a different attorney to make the inspection (which never occurred). For simplicity, we take them together.

, Likewise, Mississippi Code Annotated section 93-11-65(4) (Rev.2013) provides (in relevant part):
When a charge of abuse or neglect of a child first arises in the course of a custody or maintenance action pending in the chancery court pursuant to this section, the chancery court may proceed with the investigation, hearing and determination of such abuse or neglect charge as a part of its , hearing and determination of the custody or maintenance issue as between the parents, as provided in Section 43-21-151, notwithstanding the other provisions of-the Youth Court Law. The proceedings in chancery court on the abuse or neglect charge shall be confidential in the same manner as provided in youth court proceedings, and the chancery court shall appoint a guardian ad litem in such cases, as provided under Section 43-21-121 for youth court proceedings, who shall be an attorney.

. See Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. The dissent contends that Jennifer was denied due process. Wé think it important to *810 note that this is not an issue she has raised on appeal—Jennifer argues that Delaney was denied due process; she makes no such argument for herself. The dissent also argues that the evidence was not sufficient to find a material change in circumstances, but Jennifer did not raise that issue, either. This Court does not address issues not raised by the parties except in the case of plain error, and these issues do not rise to that level. Walker v. Gann, 955 So.2d 920, 926 (¶ 18) (Miss.Ct.App. 2007).