# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01780-COA

**DODI DEANNE GEGUMIS HAMBLIN**          **APPELLANT**

**v.**

**LESLIE BRANDON ALLISON**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2019 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES BRANDON JUSTICE |
| | JOHN MATTHEW ORR |
| ATTORNEYS FOR APPELLEE: | JERRY WESLEY HISAW |
| | DAVID CLAY VANDERBURG |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 10/27/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Following a trial, a woman lost a custody battle to her former boyfriend and was accordingly required to yield sole and legal custody of their two children to him. On appeal, she argues that a lack of custody recommendation from the guardian ad litem (GAL) and testimony from a reunification therapist compromised the fairness of the trial. She also claims that the chancery court erred in failing to include a summary of the GAL's recommendations and qualifications in her "findings of fact and conclusions of law." Finding no error, we affirm.

## FACTS

¶2.     The relationship between Dodi Hamblin and Leslie Allison produced two children, K.A. and K.B.[1]   The couple separated.  A rather complex and unpleasant custody battle followed.

¶3.     Allison initiated proceedings by filing a complaint for custody of the children. Following a trial on the merits, the court decided that Hamblin was the more "fit" parent and accordingly granted her physical and legal custody of both children.  Allison, on the other hand, was granted certain visitation rights and ordered to pay child support.  Based on the record, it appears that the two also informally agreed that Allison's mother, Ginger, was allowed to babysit the children.

¶4.     A little over a year after the custody determination, Allison learned that Hamblin told several people that Ginger sexually abused one of the children.  The initial allegation propelled a series of follow-up investigations, including visits to Allison's home by social workers, phone calls from a sheriff's office regarding the allegation, a phone call from the Department of Human Services, and a forensic examination of the allegedly abused child. Additionally, Ginger was subsequently indicted on a felony fondling charge.  In the interim, Allison claimed that Hamblin denied him certain visitation rights, denied him access to records pertaining to the children, and allowed a variety of men to stay overnight at her home while the children were present.

¶5.     The foregoing concerns prompted Allison to file a complaint for child custody

---

[1] We use initials to protect minors' identities.

modification. Hamblin responded by denying the complaint's more damaging allegations and counterclaimed that Allison allowed his mother to visit the children even after the sexual abuse allegations were made.

¶6. The chancery court appointed attorney Ginger Miller as guardian ad litem to investigate the allegations of abuse and make a recommendation as to abuse and neglect. After her investigation, the GAL conferred with the chancellor and the parents at a pretrial conference. Hamblin claims that during the conference, the GAL "testified that she would recommend to the Court that the [m]other retain sole legal and physical custody of the minor children."

¶7. Some time prior to trial, the court also ordered reunification therapy to determine whether, in light of the sexual abuse allegations, it was appropriate to allow Allison's mother to be near the children. The therapist in charge of the sessions, Joy Traylor, examined the children closely as they interacted with their grandmother in a relaxed setting. Per the request of the children's stepmother, Traylor drafted a memorandum detailing her observations from the therapy session and provided the stepmother a copy.

¶8. Meanwhile, the GAL had also visited the children on several occasions to further investigate the abuse allegations. The child who was allegedly abused had recanted her statement that her grandmother abused her. As a result, the charges against the grandmother were dismissed. The GAL further learned that the medical examination of the allegedly abused child returned no evidence of sexual abuse.

3

¶9. At trial, Hamblin claims the GAL informed her attorney during a break that she would not make any recommendation regarding child custody because the order appointing her did not mandate her to do so. The GAL would later testify that based on her observations of the children and her interviews with them, it seemed that both parents "coached" the children to say certain things. For example, the GAL testified that at times when she asked one of the children a random question about how her day was going, the child would immediately reply, "Meme touched me."

¶10. When questioned by Hamblin's attorney, the GAL admitted that she initially drafted a report in which she stated that the "disclosures" by one of the children during an investigation were "consistent with sexual abuse." However, she ultimately concluded the allegations of sexual abuse were unsubstantiated. Further, when Hamblin's attorney asked the GAL what she thought was in the best interest of the children, the GAL replied that the children needed to build a "rapport" with a therapist for consistent treatment "given what [they'd] been through." She also suggested that for the children's sakes, the parents needed some help in "getting along" because of the constant "back-and-forth."

¶11. Traylor testified during the hearing about her findings with respect to the reunification therapy. Specifically, she testified that the children showed no "hesitation" when interacting with their grandmother and appeared to be elated to see her instead. For about an hour, the children played with their grandmother and expressed their eagerness to see her again soon. Most notably, the daughter, without any encouragement from Traylor, spontaneously asked

4

the grandmother if she was mad at her for lying about the sexual abuse. According to Traylor, the grandmother tearfully replied that she was not mad at the little girl. Traylor also gave the court a report detailing her findings.

¶12. The remainder of the trial appeared to expose Hamblin's alleged neglect of the children—specifically, her failure to attend to the children's medical and educational needs. In addition to artfully disclosing the alleged overnight visits from Hamblin's boyfriends while the children were present, Allison's counsel also presented evidence that the son had a painful, decayed tooth while in Hamblin's care. Additionally, the daughter was not given glasses despite her complaints of vision problems, and she failed kindergarten under the mother's care.

¶13. Both Hamblin and Allison testified concerning their plans to resolve these issues. But in light of the allegations raised against Hamblin, and finding Allison's plans more persuasive, the chancery court found that Hamblin was no longer the more "fit" parent due to a material change in circumstances and shifted full custody of the children to Allison. Hamblin, on the other hand, was granted visitation rights and ordered to pay Allison child support.

¶14. Aggrieved, Hamblin appeals. She asserts three main assignments of error: (1) that the chancery court erred in not directing the GAL to make a recommendation as to modification of child custody, (2) that the chancery court erred in failing to include a summary of the GAL's recommendations and qualifications in its findings of fact and conclusions of law,

5

and (3) that the chancery court erred in allowing the reunification therapist to testify.

## STANDARD OF REVIEW

¶15. Our review in child custody cases is limited. *Floyd v. Floyd*, 949 So. 2d 26, 28 (¶5) (Miss. 2007). "This Court will not reverse a chancery court's factual findings, where there is substantial evidence in the record supporting these findings of fact." *Id*. Accordingly, "[r]eversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard." *Id*.

## DISCUSSION

**I.      Whether the chancery court erred in not directing the GAL to make a recommendation as to modification of custody at trial.**

¶16. Hamblin claims that because the GAL promised to make a child custody recommendation at the pretrial conference, the chancery court erred in not directing the GAL to make the recommendation at trial.

¶17. The appointment of a GAL is mandatory "in custody cases where allegations of abuse and neglect are made." *Id*. at (¶7). Our Supreme Court has thoroughly detailed a GAL's role in cases of this type, specifying that she must "investigate the allegations before the court, process the information found, report all material information to the court, and (*if requested*) make a recommendation." *S.G. v. D.C.*, 13 So. 3d 269, 282 (¶57) (Miss. 2009) (emphasis added). In other words, a GAL only needs to make a recommendation concerning a particular matter if the court has ordered her to do so. *Id*.

¶18. As mentioned above, Hamblin complains that the GAL failed to fulfill her duty as

directed in the order appointing her when she declined to make a recommendation as to child-custody modification at trial.[2]  Yet based on testimony in the transcript, the GAL's appointment was limited to her expertise and testimony regarding the abuse and neglect of the children, and accordingly did not require any recommendations concerning custody matters.

¶19.    In fact, Hamblin's attorney conceded the GAL's limited role when he questioned her at trial, stating, "[n]ow, you were specifically appointed to deal with the abuse, but do you have any opinion on whether a change in custody would be in their best interest or would have a positive or negative impact upon them?"  The GAL replied that she "didn't fully prepare that kind of analysis" and wished to "stay within the box that [she] was initially put in."

¶20.    Following this short exchange, Hamblin did not challenge the GAL regarding her alleged promise to make child-custody recommendations or her responsibility to do so.  The GAL did, however, testify extensively about abuse and neglect matters and made

_____

[2] Hamblin designated only portions of the record below, as she is allowed to do per MRAP 10(b)(1).  However, she did not designate the Order Appointing Guardian Ad Litem. This omission means we will not review this point on appeal.  MRAP 10(b)(2) ("[I]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion."); *see also* MRAP 28(a)(7) ("The argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on."); *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017) (holding that arguments which do not comply with Rule 28(a)(7) are procedurally barred).

7

recommendations harmonious with her findings, as requested by the chancellor. Specifically, she recommended that the children receive counseling.

¶21. The GAL fulfilled her appointed duty when she recommended that the children receive counseling due to the abuse and neglect allegations. Because the court did not specifically request that she make a recommendation on custody matters, she was not required to do so. It is the order of the chancery court's request which prompts the GAL's duties to make a recommendation. Here, the chancery court requested that the GAL investigate abuse and neglect matters and make generalized recommendations concerning those matters. The GAL did so. Therefore, this issue is without merit.

¶22. Hamblin's argument that she reasonably relied on the GAL's custody recommendation as evidence that she was the more fit parent is also without merit. First, a GAL in these cases functions as a court-appointed investigator, not as a party's witness. Second, Hamblin was afforded an opportunity to demonstrate her fitness as a parent and likewise advocate for her position throughout the trial. She was given an opportunity to cross-examine witnesses who challenged her integrity as a parent.

¶23. Furthermore, the GAL did offer testimony that supported Hamblin's case when she testified that she believed Allison also coached the children to say certain things. The GAL also conceded that statements were made that were consistent with Hamblin's sexual abuse claims, which also supported the mother's position. Essentially, the chancery court was presented with reasons to potentially find in favor of Hamblin, but declined to do so.

8

Therefore, any claim that the GAL's missing custody recommendation damaged Hamblin's case is without merit.

¶24. Because it appointed the GAL to investigate abuse and neglect matters, and requested only that she make generalized recommendations concerning those matters, we find that the chancery court was not manifestly wrong in not ordering the GAL to make a recommendation as to child custody.

> II. **Whether the chancery court erred in failing to include a summary of the GAL's recommendations and qualifications in her "findings of fact and conclusions of law."**

¶25. Hamblin claims that the trial court erred in failing to include a summary of the GAL's recommendations and qualifications in her "findings of fact and conclusions of law."

¶26. Our Supreme Court has mandated that "[a] chancellor shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court's findings of fact and conclusions of law" when the appointment of a guardian is required by law. *Smith v. Smith*, 206 So. 3d 502, 510 (¶18) (Miss. 2016) (internal quotation mark omitted). Further, "in cases where 'the court rejects the recommendations of the guardian,' the chancellor 'must' include his or her 'reasons for rejecting the guardian's recommendations.'" *Id*. (quoting *J.P. v. S.V.B.*, 987 So. 2d 975, 982 (¶18) (Miss. 2008)).

¶27. The *Smith* Court addressed a nearly identical assignment of error. *Id*. at 511 (¶19). In that case, a chancellor appointed a GAL specifically to assess visitation rights, but did not require the GAL to make a custody recommendation. *Id*. At trial, the GAL recommended

that the children receive counseling. *Id*. at (¶20). But after awarding physical and legal custody to one of the parties, the chancellor "made no mention of the GAL's specific recommendation that the minor children receive counseling." *Id*. at 508 (¶7). Instead, the chancellor made his own "independent custody assessment." *Id*. at 511 (¶19).

¶28. The Court first noted that the chancellor did not err in making his own "independent custody assessment" because he did not require the GAL to make such a recommendation and because the GAL never attempted to make a custody recommendation. *Id*. But the Court also pointed out that the GAL *did* make a recommendation regarding counseling that the chancellor "apparently" rejected "without saying why." *Id*. The Court found that, although this amounted to error on the chancellor's part, the error was harmless because the GAL's recommendation ultimately did not affect custody. *Id*. at (¶20). Summarizing this point, the Court held that "[the chancellor's] omission alone [did] not undo the chancellor's custody award or warrant remand on a matter that has no bearing on custody." *Id*.

¶29. Our case closely mirrors *Smith*. The chancellor appointed the GAL to make a recommendation regarding abuse and neglect matters, but did not specifically appoint her to make a custody recommendation. In accordance with her duties, the GAL recommended that Hamblin's children receive counseling. However, the chancellor did not mention the GAL's recommendation in either her "findings of facts and conclusions of law" or her verbal bench ruling.

¶30. As a result, we find that the chancellor impliedly rejected the GAL's recommendation

and would generally be required to detail her reasons for doing so. In accordance with precedent, it is always better to explicitly address a GAL's recommendations and reasons for rejecting said recommendations in these sensitive matters. But as in *Smith*, we ultimately hold that the chancellor's omission "does not undo the chancellor's custody award or warrant remand" because the GAL's recommendation "[had] no bearing on custody." *Id*. Accordingly, we decline to find reversible error on this issue.

### III. Whether the chancery court erred in allowing the reunification therapist to testify at trial.

¶31. Hamblin claims that the chancery court erred in allowing Joy Traylor, the reunification therapist, to testify at trial because Hamblin was not afforded an opportunity to review Traylor's findings prior to trial. Hamblin cites Mississippi Rule of Civil Procedure 34(a), which states:

> Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents or electronically stored information (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably useable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody, or control of the party upon whom the request is served[.]

¶32. Hamblin states that "[she] and her counsel requested on two separate occasions, months prior to trial, that Health Connect America and Joy Traylor produce certain counseling records from Traylor's therapy sessions with the minor children [.]" But Hamblin also concedes that this information was not requested "via the discovery process." She

11

insists, however, that "this Court should treat [her] requests for production as if such requests were made via the discovery process," because she had the legal right to obtain the information as the children's "legal and physical custodian."

¶33. Hamblin fails to point to any legal authority that supports her position that requests for production of documents outside of discovery should be treated as discovery requests if a person has legal and physical custody of her children. Moreover, Rule 34(a) is inapplicable since Hamblin sought documents from a non-party. Also, the chancery court emphasized the reason Hamblin's objection to the introduction of Traylor's testimony was overruled—Hamblin admitted that she did not seek any other available options to compel production of the evidence she sought, such as through a subpoena duces tecum. These options were available to her, but she chose not to exercise them. Accordingly, we find there was no error.

## CONCLUSION

¶34. Because we find no error on any of the issues that Hamblin has presented, the disposition of the chancery court is affirmed.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR.**